25CA2086 Peo in Interest of LBN 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2086
Arapahoe County District Court No. 23JV399
Honorable Shay Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.B.N. and B.B.N., Children,

and Concerning V.N.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE TOW
Harris and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

John Christofferson, Interim County Attorney, Alison A. Bettenberg, Assistant County Attorney, Aurora, Colorado, for Appellee

Angela M. Compton, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, V.N.C. (mother) appeals the juvenile court's order revoking her deferred adjudication and adjudicating L.B.N. and B.B.N. (the children) dependent and neglected.  We affirm the judgment.

## I.     Background

¶ 2     The Arapahoe County Department of Human Services filed a petition in dependency or neglect based on mother's mental health struggles.  The Department later amended the petition to include allegations of ongoing domestic violence between mother, the children's father, and mother's husband.

¶ 3     Mother admitted that the children were homeless, without proper care, or not domiciled with their parent, guardian, or legal custodian through no fault of mother.  The parties agreed to defer the adjudication for at least six months conditioned on mother's compliance with an appropriate treatment plan adopted by the juvenile court.

¶ 4     The court adopted a treatment plan requiring that mother, among other things, (1) maintain contact with the Department's caseworker; (2) participate in regular family time; (3) complete a mental health evaluation and engage in recommended treatment;

1

(4) demonstrate the ability to be a protective parent; (5) maintain legal income; and (6) obtain safe and stable housing.

¶ 5 After six months, the court extended the deferred adjudication for an additional six months. The Department then moved to revoke the deferred adjudication and adjudicate the children dependent or neglected based on mother's inability to provide the children with a safe and stable home, maintain employment, or demonstrate a protective capacity for the children. In a separate motion, the Department moved to amend mother's treatment plan to include a component requiring that she participate in domestic violence victim services.

¶ 6 The juvenile court held an evidentiary hearing, revoked mother's deferred adjudication, and entered the judgment adjudicating the children dependent and neglected. In addition, the court granted the Department's motion to amend mother's treatment plan.

## II. Treatment Plan Compliance

¶ 7 Mother contends that the juvenile court erred by entering an order of adjudication because the Department failed to prove that she did not comply with her treatment plan. We disagree.

### A. Applicable Law and Standard of Review

¶ 8 In dependency and neglect proceedings, an adjudication represents the juvenile court's determination that state intervention is necessary to protect a child and that the parent requires rehabilitative services to safely care for the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 16. Typically, before adjudicating a child dependent or neglected, the court must hold a hearing at which the department is required to prove the allegations in the petition by a preponderance of the evidence. *Id.*; *see also* § 19-3-505, C.R.S. 2025. Alternatively, the court may accept a parent's admission at an adjudicatory hearing. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 32. "The court's acceptance of [a parent's] admission establishe[s] the status of the child[] as dependent or neglected . . . ." *Id.*

¶ 9 When a parent admits that a child is dependent or neglected, the juvenile court may defer adjudication by continuing the adjudicatory hearing. § 19-3-505(5). Specifically, when a parent admits the child is dependent or neglected, a deferred adjudication allows the court, with all parties' consent, to continue the adjudicatory hearing for six months and to defer entry of judgment.

§ 19-3-505(5)(a)-(b). Following the initial six-month period, the court may continue the hearing for another six months, after which the court must dismiss or sustain the petition. § 19-3-505(5)(b).

¶ 10 In determining whether to revoke a deferred adjudication, the juvenile court may consider the parent's admission made when the deferral was entered, along with any evidence related to the progress the parent has made and the ongoing needs and status of the child. *See People in Interest of N.G.*, 2012 COA 131, ¶¶ 26-27.

¶ 11 Whether a child is dependent or neglected presents a mixed question of fact and law because it requires the application of the statutory criteria to evidentiary facts. *See People in Interest of E.R.*, 2018 COA 58, ¶ 5. We review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

## B. Analysis

¶ 12 Mother argues that she was in "substantial compliance with the intent" of the deferred adjudication and that the juvenile court erred when it revoked the deferred adjudication "where there was no violation of the written terms" of the agreement. We disagree.

4

¶ 13    The juvenile court found that "some boxes have been checked off" with regard to the treatment plan objectives but ultimately found that mother had not resolved the issues that brought the family to the attention of the Department.  The court recognized that its only choice at the time was to either revoke the deferred adjudication or dismiss the dependency proceeding entirely and end the Department's involvement.  Ultimately, the court found that, although mother had "lessened" or "ameliorated" the mental health concerns, the family still had other issues to be resolved before the children could return to mother's care.

¶ 14    The record supports the juvenile court's findings.  The caseworker, who was qualified as an expert in casework with an emphasis in child protection, testified that although mother had complied with the caseworker contact component, she had not fully complied with, completed, or been successful with the other objectives of her treatment plan.

¶ 15    The caseworker testified that mother completed a mental health evaluation and consistently attended sessions with a therapist.  But mother had not developed necessary coping skills and strategies, nor had she managed interpersonal and emotional

issues as required by the treatment plan, though she continued to work on these objectives. The caseworker illustrated this by explaining that mother's interactions with others continued to be inappropriate and were "sometimes physical, but at other times, verbal." And although mother was starting to recognize the impact that her actions had on the children, the caseworker had not seen behavioral changes that demonstrated mother's understanding.

¶ 16 As far as protective parenting, the caseworker testified that mother had started to understand the cause-and-effect relationship between her actions and effects on the children and, at times, had taken physical action to protect the children. But the caseworker also testified that mother had not been able to show a protective capacity long term and that she continued to put herself and the children in unsafe situations with unsafe people.

¶ 17 With respect to family time, although mother had unsupervised visits for part of the case, the visits had recently been modified to supervised by kin because mother had not followed the safety plan requiring that her husband not be present during visits with the children. And the court heard about a domestic violence incident involving her husband at maternal grandparents' house,

where the children were present. In sum, the caseworker testified that the inconsistencies between mother's statements and behaviors and reports the caseworker received from others made it very difficult to assess what progress mother had made on the treatment plan objectives.

¶ 18    Lastly, the caseworker testified that mother had not yet secured employment and a legal income. In addition, because mother continued to live in an apartment her husband paid for, she remained subject to his power and control over her living situation. As a result, mother still lacked the stable home called for in her treatment plan.

¶ 19    In sum, the caseworker testified that mother had not complied with the treatment plan as a whole and, at the time of the revocation hearing, was not fit to parent the children.

¶ 20    To support her argument that the juvenile court erred, mother points to evidence that she was in substantial compliance with several components of her treatment plan. But the court acknowledged mother's efforts and still determined that she had not truly resolved the issues that brought the family to the attention of the Department. Because the court's factual findings regarding

mother's fitness and whether the child was dependent or neglected have record support, we defer to them.  And, considering de novo the impact of these findings, we discern no error in the court's ultimate conclusion that the adjudication should enter.

¶ 21    To the extent mother alleges that the juvenile court erred by finding she was not complying with the domestic violence victim services component of her treatment plan that had not yet been adopted, we disagree.  The court heard evidence that mother was receiving domestic violence victim services at the time of the revocation hearing.  But it amended the treatment plan to require mother to engage in those services only after it revoked the deferred adjudication.

## III.   Disposition

¶ 22    We affirm the judgment.

JUDGE HARRIS and JUDGE BROWN concur.